## H. P. REIGART, Appellant, v. MANUFACTURERS COAL AND COKE COMPANY.

**In Banc, March 9, 1909.**

1. **SALE OF GOODS: At Common Law: Statute of Frauds: Contracts Pieced Out Aliunde.** At common law contracts for the sale and delivery of large amounts of goods, extending over a series of years, were not required to be in writing and if the contract was incomplete on its face, oral evidence was admissible to supply the defects, because the oral contract being good without being reduced to writing, and the presumption that all the agreement was in writing being negatived on its face, no principle of law was violated by admitting parol evidence to piece out the omitted parts. But in order to prevent fraud and perjury all that has been changed by the Statute of Frauds, which requires that all such contracts shall be in writing. And the statute does not mean a part of the contract, but all of the contract.

Reigart v. Coal & Coke Co.

2.  ————: Contract: Incomplete on Face: No Consideration: Pieced Out Aliunde: Statute of Frauds.  Plaintiff sues for one million dollars damages for breach of a written contract, made November 20, 1902, by which defendant agreed to furnish and plaintiff to receive such coal as plaintiff "shall make requisition for, not exceeding 2,500 tons per working day," at $1.75 per ton, the agreement to take effect January 1, 1903, and continue until December 31, 1907.  No consideration was expressed to support the contract, and plaintiff contends that he should have been permitted to show that independent of this contract there was an oral agreement that he should go out and work up a market for the coal, and that such understanding was the inducing consideration for the written contract, and that he performed that oral agreement.  *Held*, first, that such oral evidence was not competent to piece out the written contract; *second*, that the oral agreement was void under the Statute of Frauds; *third*, the agreement was not to be performed within one year and was not in writing, and the written contract was not supported by any valid consideration or earnest money; and, *fourth*, the contract showing on its face that it was not to be performed within one year, the part performance did not avoid the Statute of Frauds.

3.  ————: ————: ————: ————: ————: Distinctions.  Most of the confusion found in the early cases interpreting the Statute of Frauds is attributable to their failure to observe the distinctions that all contracts embraced within section 3418, Revised Statutes 1899, and all of them governed by the last clause of section 3419, must be in writing, while all of those embraced within the first three clauses of section 3419 may or may not be in writing.  If, however, they are reduced to writing, and the writing is complete on its face, then parol evidence is not admissible to alter or add to them; but if the writing is incomplete, and shows upon its face that all the terms of the contract are not embraced in the writing, then parol evidence is admissible to piece out the omitted parts.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*John Maynard Harlan* and *Higbee & Mills* for appellant; *Frank Hagerman* of counsel.

(1)  The court erred in refusing to admit parol evidence to show the conditions and circumstances sur-

rounding the parties prior to and at the time the contract was executed, for the purpose of showing what the parties intended by the contract. 17 Cyc. 673; Laclede Cons. Co. v. Moss Tie Co., 185 Mo. 25; Liebke v. Knapp, 79 Mo. 22; Minn. Lumber Co. v. Coal Co., 160 Ill. 85; Fire Ins. Ass'n v. Wickham, 141 U. S. 564; North American Trans., etc., Co. v. Samuels, 146 Fed. (C. C. A.) 48. (2) The court erred in refusing to admit parol evidence to show what was the consideration moving from Reigart, for: (a) The admission of such evidence to show the consideration of a written contract is not a violation of the Statute of Frauds. 6 Am. and Eng. Ency. Law (2 Ed.), 758; 2 Street, Foundations of Legal Liability, 179; Wain v. Warlters, 5 East 10, 2 Smith's Lead. Cas. 243; Egerton v. Mathews, 6 East 307; Packard v. Richardson, 17 Mass. 121; Hayes v. Jackson, 159 Mass. 451; Gillighan v. Boardman, 29 Me. 79; Sage v. Wilcox, 6 Conn. 81; Reed v. Evans, 17 Ohio 128; Miller v. Irvine, 1 Dev. & B. Law (N. C.) 103; Ashford v. Robinson, 8 Ire. Law (N. C.) 114. This is true in Missouri. Browne, Stat. of Frauds, secs. 381, 381a; Bean v. Valle, 2 Mo. 126; Halsa v. Halsa, 8 Mo. 303; Ivory v. Murphy, 36 Mo. 534; Smith v. Shell, 82 Mo. 215; Rucker v. Harrington, 52 Mo. App. 481; Kelly v. Thuey, 143 Mo. 422. (b) The admission of such evidence to show the consideration of a written contract is not a violation of the parol evidence rule. 6 Am. and Eng. Ency. Law (2 Ed.), 765; 1 Mechem on Sales, sec. 422; 4 Wigmore on Evidence, sec. 2430; Jackson v. Railroad, 54 Mo. App. 636; Davis v. Gann, 63 Mo. App. 425; Harrington v. Railroad, 60 Mo. App. 223; O'Day v. Conn, 131 Mo. 321; Liebke v. Knapp, 79 Mo. 22; Edwards v. Smith, 63 Mo. 119; Bartlett v. Matson, 1 Mo. App. 151; Cosgriff v. Dewey, 21 App. Div. 129, 47 N. Y. Supp. 255; Davenport v. Mason, 15 Mass. 84; Bowser v. Cravener, 56 Pa. St. 132; Cummings v. Dennett, 26 Me. 397; Baltes Land, etc., Co. v. Sutton, 32 Ind. App. 14; Ryan v.

Hamilton, 205 Ill. 191; Sanders Brick Co. v. Columbia, etc., Co., 86 Mo. App. 169; Ayer v. Bell Mfg. Co., 147 Mass. 46; Bonney v. Morrill, 57 Me. 368; Lafitte v. Shawcross, 12 Fed. 519. (3) The court stated as the "crucial" point in the case "that the contract on ·its face is utterly devoid of mutuality" and held that, since mutuality was lacking, "it was therefore unilateral," and being unilateral, it was therefore unenforceable. The court here fails to recognize a legal fact which is too well settled to admit of controversy, i. e., that a unilateral contract is as enforceable as any other, provided it is supported by a valuable consideration. Mutuality exists where an outstanding enforceable promise is given by one party as the consideration for a concurrent, outstanding and enforceable promise given by the other. In such a case the contract is bilateral, because each party has yet to perform his obligation. A unilateral contract exists where, by the passing of an executed consideration from one party to the other, an obligation has been created to be performed by that other. The contract in suit was unilateral, and therefore the question of mutuality does not arise. Mutuality is only one phase of consideration. If there is any other consideration the presence or absence of mutuality is immaterial. Anson on Contracts, *12; 1 Parsons on Contracts, sec. 450; Wald's Pollock on Contracts, 175, note; 15 C. C. A. 543, note; Laclede Cons. Co. v. Tudor Iron Works, 169 Mo. 137; W. G. Taylor Co. v. Bannerman, 120 Wis. 187; Mueller v. Bethesda M. S. Co., 88 Mich. 390; Emerson v. Packing Co., 100 N. W. 365; Am. Pub., etc., Co. v. Walker, 87 Mo. App. 503; Grove v. Hodges, 55 Pa. St. 504; Justice v. Lang, 42 N. Y. 493; Plumb v. Campbell, 129 Ill. 101; Cherry v. Smith, 3 Humph. (Tenn.) 19; Railroad v. Witham, L. R. 9 C. P. 16, 43 L. J. C. P. 1, 29 L. T. Rep. (N. S.) 471. (4) The consideration mov-

217 Sup—10

ing from plaintiff to defendant company which vitalized the contract in suit consisted in the services rendered in pursuance of his previous undertaking, entered upon at defendant company's request, to use his best efforts to make a market for its coal. (5) The consideration offered to be proved was sufficient to support the undertakings of defendant company. Liebke v. Knapp, 79 Mo. 22; Wilson v. Clonbrock, etc., Co., 105 Fed. 846; McCall v. Icks, 107 Wis. 232; Kaufman Bros. v. Mfg. Co., 78 Ia. 679. (6) Consideration in the inception of a contract is not essential; if a consideration is later supplied, that is sufficient. 9 Cyc. 329; Pomeroy, Specific Performance, sec. 169; 7 Am. and Eng. Ency. Law (2 Ed.), 115; Hammon on Contracts, p. 683; 15 C. C. A. 547, note; L'Amoreaux v. Gould, 7 N. Y. 349; German v. Gilbert, 83 Mo. App. 411; Goward v. Waters, 98 Mass. 596; Muscatine Water Co. v. Muscatine Lumber Co., 85 Ia. 112; Willits v. Ins. Co., 45 N. Y. 45; Plumb v. Campbell, 129 Ill. 101; Sheffield Furnace Co. v. Hull Coal, Etc., Co., 101 Ala. 446; Laclede Cons. Co. v. Tudor Iron Works, 169 Mo. 137; Morse v. Bellows, 7 N. H. 549. (7) After plaintiff at defendant company's request had rendered valuable services in securing a market for its coal, defendant company could not legally refuse to furnish plaintiff coal up to the amount agreed upon in the contract between them. Martin v. Meles, 179 Mass. 114; Campbell v. Lambert & Co., 36 La. Ann. 35; Fontaine v. Baxley, etc., Co., 90 Ga. 416; Storm v. United States, 94 U. S. 76; Park Bros. v. Mfg. Co., 49 Fed. 618; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77. (8) This agreement between plaintiff and defendant company might, in its inception, be considered either as a contingent contract or as a "mere continuing offer." It is immaterial which view of the contract is taken, for, under either theory, so soon as Reigart had supplied a consideration by rendering valuable services, the contract between him and defend-

ant company became absolute and unconditional.   21
Am. and Eng. Ency. Law (2 Ed.), 924; German v. Gilbert, 83 Mo. App. 411; Wilson v. Clonbrock, etc., Co.,
105 Fed. 846; Ide v. Leiser, 10 Mont. 5.

*O. M. Spencer, Campbell & Ellison, Willard P.
Hall* and *E. W. Hinton* for respondent.

(1)   The contract sued on, upon its face, binds
only defendant, is without certain consideration moving to defendant, and at the time of its execution was
unenforceable by either party to it.   (2)   The alleged
oral contract was within the Statute of Frauds and
for that reason evidence of it was properly excluded.
Johnson v. Reading, 36 Mo. App. 306; Cochran v.
Whiteside, 34 Mo. 418; Taylor v. VonSchroeder, 107
Mo. 206; Biest v. Shoe Co., 97 Mo. App. 137; Wainscott v. Kellogg, 84 Mo. App. 621.   Performance as
used in the statute is construed to mean complete and
full performance, according to the terms of the agreement.   Giraud v. Richmond, 2 C. B. A. 35; Parks v.
Francis, 50 Vt. 626; McElroy v. Ludlin, 32 N. J. Eq.
828; Tatterson v. Mfg. Co., 106 Mass. 56; Tiernan v.
Granger, 65 Ill. 351.   The written memorandum must
be complete in itself, without parol proof, in order to
satisfy the Statute of Frauds.   If any of the essential
terms of the contract be omitted from the written
memorandum, the omission is fatal, and the contract
cannot be enforced.   Biest v. Shoe Co., 70 S. W. 1081;
Cunningham v. Roush, 157 Mo. 336; Bruckman v. Dry
Goods Co., 91 Mo. App. 454; Mine, etc., v. White, 106
Mo. App. 222; Rucker v. Herrington, 52 Mo. App. 481;
Van Stone v. Hopkins, 49 Mo. App. 386; Cunningham
v. Williams, 43 Mo. App. 629; Christensen v. Wooley,
41 Mo. App. 53; Smith v. Shell, 82 Mo. 215; Kelly v.
Thuey, 143 Mo. 422.   Plaintiff's counsel concede this
rule, but contend that there is one exception to it, to-wit, the consideration upon which is based the promise

sought to be enforced, and that said consideration need not be stated in the written memorandum. In support of their contention they quote from the opinions of this court in Ivory v. Murphy, 36 Mo. 534, and Smith v. Schell, 82 Mo. 218. Counsel admit, however, that the rule, and not the exception, so far applies to the case of a sale as to require the price to be stated in the memorandum. Said admission only concedes the law as it is firmly established in this State, and as it exists elsewhere. In every case of sale, within the Statute of Frauds, the memorandum must state the price, or else the consequences will be fatal, and the contract be unenforceable by either party to it. Mine, etc., Co. v. White, 106 Mo. App. 222; Ringer v. Holtzclaw, 112 Mo. 519; Boyd v. Paul, 125 Mo. 9; Grafton v. Cummings, 99 U. S. 100; 2 Kent (14 Ed.), 511; Browne on Statute of Frauds (5 Ed.), secs. 381-381a; Peycke v. Ahrens, 98 Mo. App. 456; Darnell v. Lafferty, 113 Mo. App. 282; Reid v. Glass Co., 85 Fed. 110; Arnold v. Garth, 106 Fed. 13. There was no such performance by plaintiff of the alleged oral contract as to take it out of the statute. 1. Because of the nature of such performance. 2. Because part performance of a contract within the one-year provision of the statute does not take it out of the statute. Williams v. Morris, 95 U. S. 456; Nowack v. Berger, 133 Mo. 24; Farrar v. Patton, 20 Mo. 81; Dickerson v. Chrisman, 28 Mo. 134; Townsend v. Hawkins, 45 Mo. 286. (3) The alleged oral contract was not admissible in evidence because the written agreement was complete upon its face and said alleged oral contract contradicted the terms of the written agreement. Rollins v. Claybrook, 22 Mo. 405; Broughton v. Null, 56 Mo. App. 234; Standard Fireproofing Co. v. St. Louis, Etc., Co., 177 Mo. 559. (4) The order by plaintiff upon defendant to furnish 600 tons of coal per working day till "next spring" did not make the contract binding upon defendant. Cold Blast Transp. Co. v. Bolt Co., 114 Fed. 77; Rail-

road v. Dane, 43 N. Y. 240; Thayer v. Burchard, 99
Mass. 508; Dennis v. Slyfield, 117 Fed. 474.

WOODSON, J.— This suit originated in the cir-
cuit court of Adair county, and was instituted by plain-
tiff against defendant to recover approximately
$1,000,000 for the breach of the contract hereinafter
set forth. The trial resulted in a verdict and judg-
ment in favor of the defendant, and, after taking the
proper preliminary steps, he appealed the cause to
this court.

The cause was assigned to Division No. One, and
was there argued and submitted for adjudication,
which resulted in a divided court, and in pursuance to
the mandate of the Constitution the cause was trans-
ferred to Court in Banc.

The contract sued upon is in words and figures as
follows:

"This agreement made this twentieth day of Nov-
ember A. D. 1902, between the Manufacturers Coal &
Coke Company, party of the first part, and H. P. Rei-
gart of St. Joseph, Missouri, party of the second part,
Witnesseth:

"The party of the first part shall furnish and the
party of the second part shall receive such coal as the
party of the second part shall make requisition for,
but not exceeding twenty-five hundred tons per work-
ing day. The coal shall be furnished from the mines
of the party of the first part in Missouri and Iowa,
and shall be free from stone, slate, dirt, bone, sulphur
and black jack, and shall be screened over bar or per-
forated shaker screens to remove slack and nut coal.

"The coal shall be subject to the inspection and
acceptance of the party of the second part at the mines
and subject to the weight of the Western Railway
Weighing Association at the mines, the actual tare
weight of cars to be ascertained by weighing the cars
empty before they are loaded.

"The party of the second part shall pay and the party of the first part shall receive as full compensation for said coal furnished hereunder one dollar and seventy-five cents ($1.75) per net ton F. O. B. cars St. Joseph, Missouri; and the same price shall apply on coal delivered F. O. B. cars to connecting lines at any junction point on the Iowa and St. Louis Railway between Mystic, Iowa, and Macon, Missouri, both inclusive, less the prevailing rate per ton on coal from said junction point to St. Joseph, Missouri.

"Payments for coal shall be made by the party of the second part on or about the twentieth of each month for coal furnished during the previous month.

"The party of the first part shall make shipments of coal in such quantity and manner as the party of the second part shall from time to time direct, but the party of the first part shall not be held liable for damages on account of failure to make shipments when such failure shall be due to strikes, fires, floods, mine accidents or other causes wholly beyond the control of the party of the first part.

"This agreement shall take effect January first, Nineteen Hundred and Three (1903), and shall continue in effect until December thirty-first, Nineteen Hundred and Seven (1907), and shall bind and inure to the benefits of the successors and assigns of the party of the first part, and the heirs, administrators and assigns of the party of the second part as fully as if the said successors, assigns, heirs and administrators had been specifically mentioned in each instance.

"In witness whereof, the parties hereto have executed this agreement, in duplicate on the day and year first above written.

"Manufacturers Coal and Coke Company,
By H. F. Redding, President.
H. P. Reigart."

"Witnesses: W. H. Marshall, C. H. Varnon.

The petition, in addition to the ordinary allegations of the breach of the contract, stated in substance that prior to and independent of the contract mentioned in the petition there was an oral contract by and between plaintiff and defendant to the effect that the former would go out and endeavor to sell this coal and make a market therefor, and that said contract and understanding on his part with the coal company was a moving motive or inducing cause or consideration which induced the coal company to enter into the contract sued upon, and he went out to make a market for the company's coal, and that in pursuance to same he did so and sent to it the orders mentioned in the petition as the result of his efforts.

The answer was a general denial, and, among other things, there was a plea of the Statute of Frauds, and that the contract sued on was unilateral and not binding on defendant.

It will be unnecessary to set out the pleadings and evidence in full, as the questions presented for determination are questions of law which will sufficiently appear in the opinion for a proper understanding of the legal propositions involved.

I. "It is conceded by counsel for appellant that the contract at its inception was unilateral—a mere option, given to Reigart, and that no. *consideration* for the option is expressed therein."

In order to escape the effects of that concession, they contend that the consideration passing from appellant to respondent and supporting the option may rest in parol and may be shown *aliunde* of the option, or the written contract.

In pursuance to that contention, counsel for appellant offered to prove by parol evidence that, independent of the option sued on, there was an oral contract entered into between them to the effect that he would go out and endeavor to make a market for and sell the

coal of respondent, and that the option given by the latter to appellant, and the undertaking on his part to create a market and sell the coal, was a moving motive or inducing cause or consideration which induced the coal company to enter into the so-called contract sued on, and that when he went out and sold the coal in pursuance to the option and his undertaking to create a market for the coal, that changed the contract from a unilateral or an optional contract, without a consideration to support it, into a bilateral contract based upon a valuable consideration, and, when broken, the company was liable for the damages which flowed from that breach.

While, upon the other hand, the respondent contends that the option sued on is unilateral and is therefore *nudum pactum,* because appellant does not thereby bind himself to purchase any of the coal mentioned in the option, nor is there any consideration to support the option expressed therein. The respondent also contends that parol evidence is not admissible to show such a consideration, for the reason that, if such consideration existed in fact, it was one of the terms of the contract and should have been included in the terms of the written memorandum thereof, otherwise it is void under the Statute of Frauds.

These various contentions of the appellant and respondent present the main legal proposition we are called upon to decide.

Sections 3418 and 3419, Revised Statutes 1899, which are two of the sections of the statutes commonly called the "Statute of Frauds," read as follows:

"Sec. 3418. No action shall be brought . . . . to charge any person . . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to

be charged therewith, or some person by him thereto lawfully authorized," etc.

"Sec. 3419. No contract for the sale of goods, wares and merchandise for the price of thirty dollars or upwards, shall be allowed to be good, unless the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract, or their agents lawfully authorized."

In order to fully understand these statutes, we should bear in mind that at common law contracts of this character were not required to be in writing; and that, if the contract was *incomplete on its face,* oral evidence was admissible to supply the defects, because the oral contract was good without being reduced to writing, and the presumption that all the agreement was in writing being *negatived on its face,* no principle of law was violated by admitting the parol evidence to piece out the omitted parts. [Ringer v. Holtzclaw, 112 Mo. 1. c. 523; Standard Fireproofing Co. v. St. Louis Fireproofing Co., 177 Mo. 1. c. 571.]

In order to prevent fraud and perjury, which were so prevalent under the common law, these statutes were enacted, requiring all such contracts to be reduced to writing, etc.

This contract bears date November 20th, 1903; and the last clause thereof, in express terms, provides that "this agreement shall take effect January first, Nineteen Hundred and Three (1903), and shall continue in effect until December thirty-first, Nineteen Hundred and Seven (1907)."

According to this provision of the contract it had five years to run after it took effect, which brings it within not only the spirit but the very letter of said section 3418, which provides that "no action shall be brought to charge any person . . . . upon any agree-

ment that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith."

This section says that no action shall be maintained without the contract is reduced to writing—not a part of the contract but the *contract* shall be reduced to writing before the action can be maintained. The word "contract" as used in the statute includes all of the terms and provisions of the agreement entered into between the parties, and not a part of them only, but all of them. If that statute had provided, or if it was the meaning thereof, that only a part of the terms of the contract should be reduced to writing and not all of them, then the statute would be without force or meaning, for the reason that at common law the same thing could have been done, that is, as before stated, at common law if the contract was incomplete on its face, oral evidence was admissible to supply the omissions.

The statute was not declaratory of the common law, but was highly remedial, intending to prevent fraud and perjury by changing the common law in that regard, by requiring that all of the terms of the contract should be reduced to writing before an action could be maintained thereon. And what has been here said is reinforced and made clearer by reverting to the common law, which conclusively presumes that the written contract is the receptacle for and contains all the terms of the agreement, and which prevent the introduction of parol evidence in any manner to change, add to or take from the written contract, except where the *written contract itself showed upon its face that parts of it were omitted therefrom.* [Koons v. St. Louis Car Co., 203 Mo. l. c. 255; Standard Fireproofing Co. v. St. Louis Fireproofing Co., 177 Mo. l. c. 571; Ringer v. Holtzclaw, 112 Mo. l. c. 523.]

The Legislature, by this statute, intended to wipe out that exception and prevent an action from being maintained, even though the omission appeared on the face of the contract. That was its very object and purpose and none other.

If what I have stated is correct then it necessarily follows that the contract price and the consideration of the contract must be stated in the written contract along with all the other terms thereof, and it cannot be shown by parol evidence.

I am fully aware and not unmindful of the fact that some of the cases cited by the learned counsel for appellant hold that under the Statute of Frauds it was not necessary that the consideration of the agreement should be stated in writing; nor am I unmindful that some of the opinions so holding were written by some of the greatest jurists and brightest minds that ever adorned this bench. Among those cases are the following: Bean v. Valle, 2 Mo. 126, written by Chief Justice McGirk; Halsa v. Halsa, 8 Mo. 303, written by Judge Scott; Ivory v. Murphy, 36 Mo. 534, written by Wagner, J. The same ruling was had in the case of O'Neil v. Crain, 67 Mo. 250, written by Judge Norton, and, to the same effect, Ellis v. Bray, 79 Mo. 227, written by Judge Ray.

The O'Neil-Crain case was a suit for damages for a breach of the following contract: "Brookfield, September 10th, 1874. William O'Neil, you will please get us 360 hogs instead of 250, if you can, so as to make three car loads at your place. Be careful about the weights. I. I. Crain Bro. & Co." It was contended by the defendants that the contract was void because it came within the provisions of the Statute of Frauds. In discussing that question Norton, J., said: "It is also argued that the written memorandum of the contract offered in evidence was not sufficient to take the case from the operation of the Statute of Frauds, and that parol evidence could not be received to supply

any of its terms. Parol evidence is clearly inadmissible to contradict, alter, or vary a written contract, but when a written memorandum of a contract does not purport to be a complete expression of the entire contract, or a part of it only is reduced to writing, the matter thus omitted may be supplied by parol evidence. [Rollins v. Claybrook, 22 Mo. 407; Moss v. Green, 41 Mo. 389; Briggs v. Munchon, 56 Mo. 467; 1 Green. Ev., sec. 284a.] The memorandum is silent as to the price to be paid, and does not purport to express the entire contract, and the evidence offered to explain it in this particular, being in no wise contradictory of the writing, was, under the authorities cited, properly admitted.''

Notwithstanding the great ability and learning of all of these distinguished jurists, I respectfully submit that they, and each of them, either overlooked the provision of the statute before quoted, and the evils that existed at common law, which the statute was intended to remedy, and applied the common law rule instead of the statute; or, if the statute was considered in those cases, then they so interpreted it as to make it declaratory of the common law in its fullest sense without changing a word, dotting an ''i'' or crossing a ''t,'' and thereby left existing in full force the very evils the statutes intended to abolish.

The foregoing cases have been many times overruled by the later adjudications of this court—some of them in express terms and all of them by necessary implication; among those so overruling them are the following:

The case of Ringer v. Holtzclaw, supra, was a suit to enforce specific performance of an alleged contract for the sale and purchase of lots 7, 8, 9 and 10 in block 184, in the town of Marceline, Missouri. Plaintiff alleged that the defendant had paid twenty-five dollars on the trade and owed $975, and that a memorandum of the agreement was reduced to writ-

ing and signed by defendant. The defense was a general denial, Statute of Frauds, and a verbal contract, where defendant averred he had an option on said lots to be taken or declined on April 2, 1888; that if he accepted them plaintiff was to furnish a satisfactory abstract and deliver a good and sufficient warranty deed, conveying a perfect title thereto; that plaintiff did not furnish a perfect abstract, and refused to make the deed. On the trial the following memorandum of the contract was read in evidence: "Marceline, Mo., March 16, 1888. It is agreed by and between E. M. Randolph, R. M. Ringer and T. A. Smedley, that each of them have the liberty to sell lots 7, 8, 9, 10, block 184, and whichever sells to have all the commission, and each party has the privilege to sell each lot at $250, which shall satisfy Mr. Ringer in full for said lots, and if sale is not made within sixteen days from this date Mr. Holtzclaw to pay to Mr. Ringer the original price agreed upon between them." The defendant never took possession of the lots. Plaintiff never offered defendant a deed to the lots, and testified that the agreement with defendant was verbal, and by it he was to assign defendant four several contracts for said lots. In discussing this question, GANTT, P. J., said:

"The circuit court committed no error in refusing the specific performance. The case comes within the letter and spirit of the Statute of Frauds. The memorandum is wholly insufficient as evidence of a contract. It does not purport to be a memorandum of a contract. It merely refers in a vague and indistinct way to an agreement made about a price at another time. Whether that other agreement would be good must depend on whether it met the requirements of the law. When it appeared to be entirely verbal, of course it had no effect in law. All the authorities are agreed that the memorandum must state the contract with reasonable certainty, so that

its essential terms can be ascertained from the writing itself without a resort to parol evidence. [Browne on Statute of Frauds, sec. 384; Benjamin on Sales (Bennett's Ed.), secs. 249, 250; Smith v. Shell, 82 Mo. 215; North & Co. v. Mendel, 73 Ga. 400; Fry v. Platt, 32 Kan. 62; Williams v. Robinson, 73 Me. 186; Lee v. Hills, 66 Ind. 474; Banks v. Mfg. Co., 20 Fed. 667; Williams v. Morris, 95 U. S. 444; Grafton v. Cummings, 99 U. S. 100.]

"The appellant invokes the doctrine that, where a contract upon its face is incomplete, resort may be had to parol evidence to supply the omitted stipulations. But, to admit the application of that doctrine in this case, we must go to the extent of permitting plaintiff to establish not a part but the whole contract by parol, and thus deny the authority of the statute, and in effect permit parties to agree that the Statute of Frauds shall not affect their contracts, and then invoke the aid of the courts of the State to enforce agreements made in defiance of its laws.

"The rule relied upon by appellant has long existed at common law in cases unaffected by the Statute of Frauds. At common law contemporaneous parol evidence was not permitted to change the written contract, because the law conclusively presumed that prior negotiations and agreements were merged in the writing, and that it contained the entire agreement.

"By the Statute of Frauds, on the contrary, the parol evidence is rejected because it is the policy of the law to regard it as untrustworthy. At common law, if the contract was incomplete on its face, oral evidence was admissible to supply the defects, because the oral contract was good without the writing, and, the presumption that all the agreement was in the writing being negatived on its face, no principle of law was violated in admitting the parol evidence. But under the Statute of Frauds, if the subject-matter of the contract is within the statute, and the contract or

memorandum is deficient in some one or more of those essentials required by the statute, parol evidence cannot be received to supply the defects, for this were to do the very thing prohibited by the statute. This must be obvious upon the slightest reflection. This distinction was made by LOWRIE, C. J., in Musselman v. Stoner, 31 Pa. St. 265. (Glass v. Hulbert, 102 Mass. 24; Moulding v. Prussing, 70 Ill. 151; Osborn v. Phelps, 19 Conn. 63; 1 Story on Equity Jurisprudence, sec. 770a; 1 Greenleaf on Evidence (14 Ed.), sec. 86); but was overlooked in O'Neil v. Crain, 67 Mo. 250, and Lash v. Parlin, 76 Mo. 391. We freely concur in the statement of the rule made in those cases when applied to a case not falling within the statute, but as to a case the subject-matter of which is within the statute, we think such a rule must inevitably become subversive of a plain statute, and it is our province to uphold and enforce the statutes, not to nullify them.

"Nor have we any inclination to add another exception to the statute, since, as said by JACKSON, C. J., in Smith v. Jones, 66 Ga. 338: 'The flood gates are open wide as to the competency of witnesses, and the only breakwater left is the requisition to put this class of contracts, and others of similar character, in writing.'

"Accordingly, we hold that parol evidence was not admissible to supplement the memorandum offered in this case, because the law demanded the contract should be in writing, and the trial court ruled correctly in so holding. . . .

"The memorandum does not support plaintiff's evidence. If there was such an agreement as plaintiff's evidence would prove, then the memorandum was utterly deficient in not stating it, and of course he cannot recover, because the statute required a memorandum of that contract, not a memorandum from which all its essentials were omitted. [Hilliard on Sales, p. 232; Smith v. Shell, 62 Mo. 215.]"

In the case of Boyd v. Paul, 125 Mo. l. c. 13 and 14, SHERWOOD, J., used this language: "In the first place, it is one of the fundamentals of the law of evidence that all precedent as well as all contemporaneous negotiations in relation to a contract afterwards reduced to writing, are, in the absence of accident, etc., conclusively presumed to have been swallowed up by, and entirely merged and expressed in, the written instrument, which thenceforth becomes the sole expression of the will and agreement of the contracting parties. This rule has been unvaryingly observed and announced by this court from its earliest to its more recent decisions. [State ex rel. v. Hoshaw, 98 Mo. 358, and cases cited; Tracy v. Iron Works Co., 104 Mo. 193, and cases cited; Jones v. Shepley, 90 Mo. 307, and cases cited.] In the second place, that portion of the contract which was *dehors* the written assignment of the lease rested in parol, and could not be introduced in evidence without acting in plain contravention of the Statute of Frauds. Where your memorandum under the statute is scant in measure you cannot piece it out by verbal additions. This subject has been so recently and satisfactorily discussed in Ringer v. Holtzclaw, 112 Mo. 519, per GANTT, P. J., and the heresy of the contrary view as contained in O'Neil v. Crain, 67 Mo. 250, so well combated, both on reason and authority, that it is unnecessary to do more than to refer in terms of approval to Ringer's case."

In the case of Kelly v. Thuey, 143 Mo. l. c. 435-6, SHERWOOD, J., said: " 'Sec. 148. II. *The Price.* In all contracts of sale, assignment, and the like, the price is, of course, a material term. It must either be fixed by the agreement itself, or means must be therein provided for ascertaining it with certainty. In the absence of such provision, either stating it or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced; and

if the contract is written, this term must appear in the memorandum or written instrument.' [Pomeroy's Spec. Perf. (2 Ed.), sec. 148. See, also, Grafton v. Cummings, 99 U. S. 100, 106; 8 Am. and Eng. Ency. Law, 726; Browne, Stat. Frauds (5 Ed.), sec. 376; 1 Warvelle on Vendors, p. 105, sec. 10; Fry, Spec. Perf., sec. 335; Waterman, Spec. Perf., sec. 146; 1 Reed, Stat. Frauds, sec. 417; Williams v. Morris, 95 U. S. 444, 456.] In this case the contract neither states the price nor furnishes the means or data whereby that price can be computed or ascertained, and is therefore an invalid contract and wholly incapable of enforcement. The memorandum being required to be complete in and of itself, parol evidence cannot be admitted to piece out the incomplete writing and make it a complete instrument. At one time in this court the heresy was announced that parol testimony was admissible for the purposes indicated. [O'Neil v. Crain, 67 Mo. 250.] The last erroneous adjudication on this subject is found in Ellis v. Bray, 79 Mo. 227; but the contrary and correct ruling was declared in Ringer v. Holtzclaw, 112 Mo. 519, and followed in Boyd v. Paul, 125 Mo. 9, 28 S. W. 171. We hold, therefore, that there is no contract in the case at bar; that is, such an one as satisfies the requirements of the Statute of Frauds.''

And as was said by MARSHALL, J., in Johnson v. Fecht, 185 Mo. 1. c. 345: ''The written authority was wholly insufficient to identify the forty acres intended to be sold. And although both the principal and agent may have understood that it was the forty acres of the principal's farm that lay south of the road, that fact lies wholly outside of the written authority and cannot be added to it by parol. As was said by SHER-WOOD, J., in Boyd v. Paul, 125 Mo. 1. c. 14, 'where your memorandum under the statute is *scant* in *measure*

you cannot *piece it out* by verbal additions.' " To the same effect is Koons v. St. Louis Car Co., supra.

It will be observed by reading the opinions which hold that parol evidence is admissible to piece out and supplement the written contract, that most of them were based upon contracts which were not covered by the Statute of Frauds at all, or were predicated upon contracts governed by the three first clauses of section 3419, which do not require the contract of sale to be in writing; that is, where he accepts a part of the goods sold and actually receives the same, or where he gives something in earnest to bind the bargain, or where he pays part of the purchase money. All such contracts can be proven by parol; but if no part of the goods purchased was accepted, or nothing was given in earnest to bind the bargain, or no part of the purchase price paid, then by the last clause of the section no action can be maintained, "unless some note or memorandum in writing be made of the bargain and signed by the parties." And the memorandum under the last clause of this section must embrace all the terms of the contract, as fully and completely as those governed by section 3418.

In fact, I do not understand counsel for appellant to contend that the contract sued on complies with the provisions of section 3418 which requires the contract to be in writing and signed by the party sought to be charged therewith, but they base his right of recovery upon the second clause of section 3419, above mentioned, which takes a contract for the sale of goods, wares and merchandise out of the Statute of Frauds, where something is given in earnest to bind the bargain, and illustrate their position by propounding substantially the following question: "Suppose I own a fine dog worth five hundred dollars, which has been lost or stolen; and suppose I should state to John Jones, 'If you will find my dog, I will sell him to you for one hundred dollars;' and suppose

John Jones should go forth and find the dog, and then come and offer me the one hundred dollars, and demand the dog, would not that be a binding and valid contract?'' Had the offer contained the further provision that it should have been performed in one year, then I would answer unquestionably in the affirmative; but if it was not to be performed in one year, but within five years from and after the date of the offer, then I would answer with equal emphasis in the negative. The reason is clear in each instance. If the contract was to be performed within one year then it would clearly fall within the second clause of section 3419, for the reason that the time and labor expended in finding the dog would be something given in earnest to bind the bargain within the meaning of the statute; but if John Jones had been given three years in which to find the dog, then clearly the contract would have violated section 3418, and the last clause of section 3419.

That exact question came before this court in the case of Self v. Cordell, 45 Mo. 345. It was there held, where the purchaser of a carding machine by verbal agreement bound himself not to use any other carding machine in the vicinity of the one sold, for a period of five years, that although the contract could not be fully performed within one year, yet having been completely executed by the vendor the vendee could not interpose the Statute of Frauds. The same question again came before this court in the case of Nally v. Reading, 107 Mo. 350. It was there reiterated that the contract fell within the Statute of Frauds, and overruled so much of the Self-Cordell case which held that the full performance of the contract would take the case out of the Statute of Frauds. In that case there was an assignment or sale of a lessee's interest in a term exceeding one year and which of course could not be performed within one year from its making. The court held that the contract of as-

signment was within the Statute of Frauds, and was for that reason void; and the fact that the defendant took possession of the land and paid a portion of the rent to the original lessor did not take the contract out of the Statute of Frauds. And in so holding the court on page 355 used this language: "And said contract also infracts the latter section in as much as the contract is not to be performed, and cannot be performed, according to its terms, within one year from the time of its making. These views are readily seen to be supported by an examination of the following authorities: Browne, Stat. Frauds, secs. 230, 231, 272, 281; Taylor on Land. and Ten., sec. 427; Durand v. Curtis, 57 N. Y. 7; Pierce v. Estate, 28 Vt. 34. And the fact that the defendant took possession under the verbal contract, and made one payment, cuts no figure in this case. Whatever may be the rule in equity as to the doctrine of part performance, the rule has no place in an action at law, as in the present instance. [3 Pars. on Cont. (7 Ed.), 60; Sharp v. Rhiel, 55 Mo. 97.] It is unnecessary to review the authorities in this State; that has been well done by ROMBAUER, P. J., in Johnson v. Reading, 36 Mo. App. 306. If there are any authorities in conflict with the views here announced, we overrule them."

It should also be borne in mind that the contract in suit was "for the sale of goods, wares and merchandise for the price of thirty dollars or upwards," and that no part of the same was delivered to or accepted by the appellant, nor was any earnest money paid or other valuable things given to bind the bargain, nor was any of the purchase price paid by him, and that the agreement was not to be performed within one year from the making thereof. These two elements of the contract bring it within the letter and spirit of said section 3418 and the last clauses of section 3419; neither of which permits parol evidence to alter or change, add to or take from the contracts

which are embraced within their provisions. Under those facts, all the authorities, however much they may disagree where the question of performance is involved, agree in holding the contract void, because it violates the Statute of Frauds. [Standard Fireproofing Co. v. St. Louis Fireproofing Co., supra; State v. Cunningham, 154 Mo. l. c. 172; Koons v. St. Louis Car Co., supra.]

Most of the confusion of the courts is attributable to their failure to observe the distinctions before mentioned; that is, all contracts embraced in section 3418, and all of them governed by the last clause of section 3419, must be in writing, while all of those embraced in the first three clauses of section 3419 may or may not be in writing. If, however, they are reduced to writing, and the writing is complete on its face, then parol evidence is not admissible to alter or add to it; but if the writing is incomplete, and it shows upon its face that all the terms of the contract are not embraced in the writing then parol evidence is admissible to piece out the omitted parts. [Browning v. Walbrun, 45 Mo. l. c. 478; Standard Fireproofing Co. v. St. Louis Fireproofing Co., supra, p. 571; State v. Cunningham, supra, p. 172; Koons v. St. Louis Car Co., supra, p. 255; Ringer v. Holtzclaw, supra, p. 523; Boyd v. Paul, supra, p. 14; Warren v. Mayer Mfg. Co., 161 Mo. 112.]

There are numerous other cases in this State announcing the same rule, and it is supported by the great weight of authority, both in this country and in England.

The rule is well stated in the case of Standard Fireproofing Co. v. St. Louis Fireproofing Co., 177 Mo. l. c. 571, by GANTT, P. J., in the following language:

"At common law parol evidence of prior and contemporaneous agreements was not permitted to change the written contract, because the law conclusively pre-

sumed that all prior and contemporaneous negotiations were merged in the writing and that it contained the entire agreement. An exception to this rule was that if the contract was incomplete on its face, oral testimony was admissible to supply the defects, and, the presumption that all the agreement was in the writing being negatived on its face, no principle of law was violated in admitting the parol evidence. But under the Statute of Frauds if the subject-matter of the contract is within the statute, and the contract or memorandum is deficient in some one or more of the essentials required by the statute, parol evidence cannot be received to supply the defects, for this were to do the very thing prohibited by the statute. [Ringer v. Holtzclaw, 112 Mo. l. c. 523; Boyd v. Paul, 125 Mo. 9; Warren v. Mayer Mfg. Co., 161 Mo. 112.]

"In this case the written contract was complete on its face, and it was clearly not allowable to permit defendant to contradict its plain terms by proof of a parol agreement made prior to its execution.

"Neither does part performance in any manner affect the contract."

The minority opinion fails to observe this distinction, and an inspection of the cases cited therein will show that most of them are based upon contracts which were reduced to writing, but which were not required to be by the Statute of Frauds; and they properly hold that where the contract shows upon its face that there are parts of the contract omitted from the writing, then oral evidence was admissible to prove the omitted parts, and the remainder of those cases have been overruled.

The contract, therefore, being void upon its face, I am of the opinion that the judgment should be affirmed. *Gantt, C. J., Burgess, Valliant* and *Fox, JJ.,* concur; *Lamm* and *Graves, JJ.,* dissent.